UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| TAH L., | Civil File No. 26-CV-171 (MJD/SGE) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| DONALD J. TRUMP, ET AL., | |
| Respondents. | |

This matter is before the Court on Petitioner Tah Eh Do Lah's ("Ms. Lah") Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C § 2241 (Dkt. 1) ("Petition") and Respondents' Motion to Transfer and Response to Petition for Writ of Habeas Corpus. (Dkts. 4, 10).[1] Ms. Lah seeks immediate release from detention. Respondents, seek an Order transferring this case to the United States District Court for the District of Texas and denying Ms. Lah's Petition. (Dkts. 4, 10). For the reasons set forth below the Court recommends the Petition be **GRANTED**, and Respondents' Motion to Transfer be **DENIED**.

---

[1] The Government's response in this matter was filed by Julie Le on behalf of the United States Attorney's Office. (*See* Dkt. 4.) Ms. Lee has not filed a notice of appearance in this case and is not admitted to the bar of the United States District Court of Minnesota in accordance with Local Rule 83.5. (*See* Dkt. 7.)

1

## BACKGROUND

### I. Immigration Proceedings

Ms. Lah is a citizen of Burma, also known as Myanmar. (Dkt. 5 ¶ 5.) Ms. Lah, her husband, and her three children were admitted to the United States as refugees on November 6, 2024. (Dkt. 1 ¶¶ 5, 49; Dkt. 5 ¶ 5; Dkt. 1-2 at 2.[2]) Ms. Lah completed the highly regulated vetting process to be admitted as a refugee with her family. (Dkt. 1 ¶ 3.) After arriving at the Chicago O'Hare airport on November 6, 2024, Ms. Lah's family located to St. Paul, Minnesota. (Dkt. 1 ¶ 50.) Ms. Lah gave birth to her fourth child in the summer of 2025, and the baby is now five months old. (*Id.*) Ms. Lah has no criminal history. (*Id.* ¶ 52.)

A refugee must be physically present in the United States for one year before they can apply for an adjustment of status. 8 U.S.C. § 1159(a)-(c). On November 10, 2025, the date Ms. Lah became eligible for adjustment of status pursuant to 8 U.S.C. § 1159(a), she filed her Form I-485, Application to Register Permanent Residence or Adjust Status ("I-495") with the United States Customs and Immigration Services ("USCIS"). (*Id.* ¶ 53; Dkt. 1-1; Dkt. 5 ¶ 6.)[3] Ms. Lah followed the law, and her application remains pending. (Dkt. 5 ¶ 6.)

---

[2] Page number citations to materials filed on the docket are citations to the CM/ECF pagination in the top right-hand corner.

[3] The Court notes that Ms. Lah alleges she mailed the I-485 application on November 6, 2025, (Dkt, 1 ¶ 55), and the Declaration of Angela Minner states that the I-485 application was filed on November 10, 2025. (Dkt. 5 ¶ 5.)

On January 9, 2026, USCIS issued a press release concerning the launch of Operation PARRIS [Post-Admission Refugee Reverification and Integrity Strengthening] in Minnesota.[4] (Dkt. 1 ¶ 45.) One day later, on Saturday, January 10, 2025, ICE agents received a referral from USCIS and conducted an operation to locate and arrest Ms. Lah. (Dkt. 5 ¶ 7.)[5] ICE agents entered Ms. Lah's apartment building through a propped open door and encountered Ms. Lah's husband and child. (Dkt. 1 ¶ 55; Dkt. 1-3 at 2.) ICE agents asked Mr. Lah's husband and child for their identification, showed Ms. Lah's husband a picture of Ms. Lah, and directed Mr. Lah to lead them into his apartment. (Dkt. 1 ¶ 55; Dkt. 1-3 at 2; Dkt. 8-1 at 2[6].) ICE agents entered the apartment and demanded Ms. Lah present her identification. (Dkt. 1 ¶ 56; Dkt. 1-3 at 2; Dkt. 8-1 at 2.)[7] Ms. Lah showed ICE agents her identification and complied with their directive to follow ICE agents outside. (Dkt. 1 ¶ 56; Dkt. 1-3 at 2; Dkt. 8-1 at 2.) Once outside, ICE agents arrested Ms. Lah. (Dkt. 1 ¶ 56.) At the time of her arrest, Ms. Lah was still breast feeding her five-month-old baby. (Dkt. 1 ¶ 51.)

---

[4] *See* USCIS, *DHS Launches Landmark USCIS Fraud Investigation in Minnesota*, https://www.uscis.gov/newsroom/news-releases/dhs-launches-landmark-uscis-fraud-investigation-in-minnesota (Jan. 9, 2026) ("[A] sweeping initiative reexamining thousands of refugee cases through new background checks and intensive verification of refugee claims.")

[5] It is unclear from the record before the Court whether ICE agents had a warrant for Ms. Lah's arrest.

[6] This document is the Declaration of Pla Wah Lah, Ms. Lah's husband. (Dkt. 8-1 at 2.)

[7] It is unclear from the record before the Court whether ICE agents had a judicial warrant to enter Ms. Lah's apartment.

## II. Proceedings in this Court

On Sunday, January 11, 2026, Ms. Lah's counsel filed the Petition believing that Ms. Lah was detained in Minnesota. (Dkt. 1 ¶ 1.) Ms. Lah argues that her detention violates her Fifth Amendment rights to substantive and procedural due process, the Immigration and Nationality Act and its implementing regulations, the Administrative Procedure Act, and the *Accardi* doctrine, because the agency is violating its own procedures, rules, and instructions. (Dkt. 1 ¶¶ 2, 58-77.)[8]

On January 12, 2026, the Honorable Michael J. Davis entered an Order to Show Cause. (Dkt. 3.) That Order directed Respondents to answer Ms. Lah's petition by January 14, 2026, and enjoined Respondents' from removing Ms. Lah from the District of Minnesota until a final decision was made on her habeas petition. (Dkt. 3 at 3.) Judge Davis specifically ordered:

> Respondents are directed to file an answer to the petition for a writ of habeas corpus of petitioner Tah L. by no later than January 14, 2026, certifying the true cause and proper duration of Petitioner's confinement and showing cause why the writ should not be granted in this case.

(*Id.* at 1.) And Judge Davis further ordered:

> Respondents' answer should include:
>
> a. Such affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's detention in light of the issues raised in the habeas petition;
> b. A reasoned memorandum of law and fact explaining respondents' legal position on Petitioner's claims; and
> c. Respondents' recommendation on whether an evidentiary hearing should be conducted.

---

[8] Ms. Lah did not have an opportunity to request a bond hearing as Respondents incorrectly stated in their Motion to Transfer. (*See* Dkt. 4.)

4

(*Id.* at 1-2.)

On January 14, 2026, Respondents filed their one-page Response to Petition For Writ of Habeas Corpus and Motion to Transfer but it did not actually respond to the Petition nor follow Judge Davis's Order to Show Cause. (Dkt. 4. [9]) Respondents assert that Ms. Lah was transferred to Houston, Texas, on January 10, 2026, within hours of Ms. Lah's arrest, "due to local detention bed space shortage." (Dkt. 4; Dkt. 5 ¶ 8.)[10] Respondents' Motion asserts that the transfer occurred before the Court's Order to Show Cause enjoining removal. (Dkt. 4; Dkt. 5 ¶ 8.) Respondents submitted the Declaration of Angela Minner in support of their Motion and purportedly attached documents in support. (Dkt. 5.) No documents were attached, and no support was otherwise provided. (*Id.*)

On January 16, 2026, the Court entered a Briefing Order, again directing Respondents to answer the Petition as Judge Davis previously ordered[11] and setting briefing dates on Respondents' Motion to Transfer. (Dkt. 9.) That same day, Ms. Lah filed a Memorandum in Opposition to Respondent's Motion to Transfer. (Dkt. 8.) Despite this Court giving Respondents' a second opportunity to comply with the Order to Show Cause,

---

[9] Though the document filed by Respondents purports to be a "Response to Petition for Writ of Habeas Corpus" it did not address the points from the Order to Show Cause, or in any way actually respond to the allegations in the Petition. (Dkt. 4.)

[10] As of the date of writing this Report and Recommendation, Ms. Lah remains in USCIS custody in Texas. USCIS, *Online Detainee Locator Sys.*, https://locator.ice.gov/odls/#/search (last accessed Jan. 19, 2026).

5

Respondents did not timely respond. (Dkts. 9, 10.)[12] Not only was Respondents' response late, but it did not comply with the Briefing Order in several respects: (1) it did not produce the documents omitted from Angela Minner's Declaration, and it did not in any way support their Motion to Transfer. (*Compare* Dkt. 9 *and* Dkt. 10.) Because Respondents failed to file a Memorandum of Law in support of their Motion to Transfer pursuant to the Briefing Order, the Court issues this Report and Recommendation on the record currently before the Court. *See* Local Rule. 7.1(g)(1), (6).

## ANALYSIS

### I. Respondents' Motion to Transfer (Dkt. 4.)

Respondents assert that because Ms. Lah was transferred to Texas before the Petition was filed, this Court lacks jurisdiction and the case must be transferred to the United States District Court for the District of Texas pursuant to 28 U.S.C. § 1406(a). (Dkt. 4.) Ms. Lah opposes Respondents' Motion arguing that venue is proper in the District of Minnesota because at the time of filing the Petition, Ms. Lah's custodian and location was unknown despite Counsel's diligent efforts to find out. (Dkt. 8 at 12.)

There are generally two requirements for a habeas petition challenging present physical confinement. First, the petition must allege "the name of the person who has custody of [her] and by virtue of what claim or authority, if known." 28 U.S.C. § 2242.

---

[12] Respondents' response to the Petition and memorandum in support of their Motion to Transfer was due by 5:00 p.m., January 18, 2026. (*See* Dkt. 9.) Respondents filed a response to the Petition at 7:46 p.m., January 19, 2026. (Dkt. 10.) Respondents did not seek permission from the Court to accept this late filing. Despite Respondents' untimely Response, and repeated violations of Court Orders, the Court addresses Respondents' arguments in their late filed Response in the interest of thoroughness.

This is known as the immediate custodian rule. Second, the Petition must be filed in the district of confinement. *See* 28 U.S.C. § 2241(a). This is known as the place of confinement rule. "Together, these two rules combine to create a general rule: "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Xia v. King*, No. 24-cv-2000 (JRT/DLM), 2025 WL 240792, at *2 (D. Minn. Jan. 17, 2025) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004)); *Ozturk v. Hyde*, 136 F.4th 382, 390-93 (2d Cir. 2025) (citing *Padilla*, 542 U.S. at 438). This general rule "serves the important purpose of preventing forum shopping." *Padilla*, 542 U.S. at 447.

However, when a petitioner "is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18; *id.* at 454 (Kennedy J., concurring) (acknowledging exception where "there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention."); *Ozturk*, 136 F.4th at 392-93 (acknowledging exception to general rule); *Ozturk v. Trump*, 777 F. Supp. 3d 26, * 37-38 (D. Mass. 2025) (collecting cases where courts have recognized exception to general rule as described in Justice Kennedy's concurrence in *Padilla*). This exception to the general rule prevents forum shopping by the Government and prevents "the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum." *Eisel v. Sec. of the Army*, 477 F.2d 1251, 1258 (D.C. Cir. 1973); *see also Anariba v. Dir. Hudson*

7

*Cnty. Corr. Ctr.*, 17 F.4th 434, 447-48 (3d Cir. 2021) (explaining that concerns about Government forum shopping "intensify when the § 2241 petitioner is an ICE detainee" and that the "frequency and circumstances surrounding such transfers can have negative repercussions on ICE detainees, particularly those seeking federal habeas relief"); *Suri v. Trump*, 785 F. Supp. 3d 128, 148 (E.D. Va. 2025) (applying exception and declining to transfer petition because doing so "would ratify an attempt at forum shopping" by the Government after ICE detained and transferred petitioner).[13]

## A. The Exception to the General Rule Applies in This Case [14]

Ms. Lah was detained on Saturday, January 10, 2026. (Dkt. 5 ¶ 7.) That same day, when Ms. Lah's family and community were unable to contact her, they reached out and

---

[13] Although predating *Padilla*, the Court also finds *Farah v. I.N.S.*, No. 02-cv-4725-DSD-RLE, 2002 WL 31828309, (D. Minn. Dec. 11, 2002) and *de Jesus Paiva v. Aljets*, No. cv-036075-DWF-AJB, 2003 WL 22888865, (D. Minn. Dec. 1, 2003) persuasive. Both cases relied on *Vasquez v. Reno*, 233 F.3d 688 (1st Cir. 2000). In *Vasquez*, the First Circuit explained that in extraordinary circumstances there may be an exception to the general rule that a petition must name their immediate custodian where, for example, ICE "spirited a[] [noncitizen] from one site to another in an attempt to manipulate jurisdiction." 233 F.3d at 696. The decisions in both *Farah* and *de Jesus Paiva* applied the exception discussed in *Vasquez* to refuse to transfer the petition to a district that ICE had transferred the petitioner to. *See Farah,* 2002 WL 31828309, at * 3 ("To now hold that Farah may only file his Petition in the state that the INS determines to send him would be to allow the INS to forum shop, intentionally or not.")*; de Jesus Paiva v. Aljets*, 2003 WL 22888865, at *4 (same).

[14] Because ICE transferred Ms. Lah *before* her Petition was filed, the other recognized exception to the general rule does not apply. *Padilla*, 542 U.S. at 441 ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.") (quoting *Ex parte Endo*, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944)).

8

sought counsel. (Dkt. 8 at 5; Dkt. 8-5 ¶¶ 4-7.[15]) Ms. Lah's family, counsel and their support staff continuously checked the ICE Detainee Online Locator System, but it did not show a location for her. (Dkt. 8 at 6; Dkt. 8-5 ¶ 10.) Counsel tried calling Fort Snelling's Bishop Whipple Building, where individuals are processed in immigration proceedings throughout Sunday, however, no one answered as the building was closed over the weekend. (Dkt. 8 at 6-8; Dkt. 8-5 ¶¶ 12, 17.) Ms. Lah's counsel, based on his extensive immigration litigation experience, assumed that Ms. Lah may be transferred to one of the various county jails within the District of Minnesota, and decided to file the habeas petition on Sunday, January 11, 2026, in the District of Minnesota reasonably believing that Ms. Lah remained detained in Minnesota. (Dkt. 8 at 6-7; Dkt. 8-5 ¶¶ 8-9, 11, 13; Dkt. 1 ¶ 1.) Though Ms. Lah's Counsel admits that he had serious concerns about whether she had been transferred out of Minnesota, those concerns were not realized until Monday, January 12, 2026, when he observed for the first time on the ICE Online Detainee Locator System that Ms. Lah was in Houston, Texas. (Dkt. 8 at 8; Dkt. 8-5 ¶¶ 14, 18.)

Under these circumstances, the Court determines that the exception to the general rule applies. Ms. Lah's counsel worked diligently and within one day of her arrest filed the Petition based on the only information available to him which was that Ms. Lah resides in this District, was arrested in this District, was detained in this District, and that ordinarily the standard practice in this District is for detained individuals to remain in Minnesota long enough to allow for legal consultation before transfer. (Dkt. 8-5 at ¶ 9.) And Ms. Lah's

---

[15] This document is the Declaration of Ms. Lah's counsel, Linus Chan. (Dkt. 8-5 at 2.)

counsel only obtained information about Ms. Lah's whereabouts *after* the Petition was filed. Courts have applied the exception to the general rule and declined to transfer on similar facts. *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 393-94 (D.N.J. 2025) (applying exception where petitioner's counsel did not know immediate custodian when petition was filed); *Suri*, 785 F. Supp. 3d at 148 (E.D. Va. 2025) (applying exception based on petitioner's counsel, at the time of filing the petition, not knowing the immediate custodian and district of confinement); *Van Tran v. Hyde*, No. 25-CV-12546-ADB, 2025 WL 3171210, at * 4 (D. Mass. Nov. 13, 2025) ("Respondent Hyde was properly named at the time of filing, and she was within this Court's territorial jurisdiction. Statutory jurisdiction attached in that moment, and the subsequent revelation that Petitioner was not actually in the district at the time of filing does not require the Court to dismiss or transfer the action. . . ."); *Ozturk*, 136 F.4th at 392-93 (applying exception to general rule where "the government did not disclose to [petitioner's] counsel where, or by whom, she was being detained and did not allow [petitioner] to contact counsel or convey her whereabouts to anyone until almost twenty-four hours after her arrest."); *Khalil v. Joyce*, 777 F. Supp. 3d 369, 410 (D.N.J.), *motion to certify appeal granted*, 777 F. Supp. 3d 411 (D.N.J. 2025) (applying exception and explaining that without the exception "the implication would be that there can be a period of time during which a person can be arrested in the United States and then moved by federal officials, during which period no habeas court would have the power to hear him out --- even though, as here, his lawyers and family cannot determine where he is only because they have been given inaccurate information about his whereabouts, and because he has not been allowed to correct that information by making a

10

phone call."). And recent decisions in this District, with factually similar circumstances, decided the exception applied and declined to transfer. *See E.E. v. Bondi et al.*, 26-cv-314 (JWB/DTS), Dkt. 7 at 3-5; *Ermatov v. Bondi et al.*, 26-cv-313 (JWB/DTS), Dkt. 7 at 3-5; *Ermatov v. Bondi et al.*, 26-cv-312 (JWB/DTS), Dkt. 8 at 3-5.[16]

Consequently, the Court finds the Petition was properly filed in the District of Minnesota and recommends that Respondents' Motion to Transfer be **DENIED**.

## I. Ms. Lah's Petition (Dkt. 1)

A "refugee" is defined as:

> (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or (B) in such special circumstances as the President after appropriate consultation (as defined in section 1157(e) of this title) may specify, any person who is within the country of such person's nationality or, in the case of a person having no nationality, within the country in which such person is habitually residing, and who is persecuted or who has a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The term "refugee" does not include any person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion. For purposes of determinations under this chapter, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or

---

[16] Another court in this District recently granted transfer where Petition failed to reply to the Respondents' argument but in doing so noted the exception to the general rule. *Palma v. Bondi et al.*, 26-cv-196 (NEB/DTS), Dkt. 8 at 2 ("However, there is an exception for when "there is an indication that the Government's purpose in removing [the] prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention.") (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 454 (2005) (Kennedy J., concurring, joined by O'Connor, J.)).

>who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

8 U.S.C. § 1101(a)(42).

Applying to enter the United States as a refugee is a "highly regulated process" requiring high levels of security, such as biometrics screening, interviews, and assessments involving multiple agencies such as the Department of Homeland Security ("DHS") and the Department of State. *See generally Pacito v. Trump*, 768 F. Supp. 3d 1199, 1211–13 (W.D. Wash. 2025). "Following screening and vetting procedures, refugees may be lawfully admitted to the United States under 8 U.S.C. § 1157." *Andrei C. v. Todd Lyons, et al.*, No. 26-CV-0166 (SRN/ECW), 2026 WL 123083, at * 3 (D. Minn. Jan. 16, 2026) (citing USCIS, *Refugees*, https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees). "Admission as a refugee is a distinct lawful immigration status." *Id.* A refugee must be physically present in the United States for at least one year before applying for adjustment of status. 8 U.S.C. § 1159(a). Ms. Lah timely submitted her adjustment of status form I-485. (Dkt. 5 ¶ 6.) Unless a person's refugee status has been terminated or their adjustment of status application denied, they may not be placed in removal proceedings. *Andrei C.,* 2026 WL 123083, at * 3 (citing *Matter of Garcia-Alzugaray*, 19 I & N Dec. 407, 410 (BIA 1986)).

Respondents argue Ms. Lah's detention is authorized pursuant to 8 U.S.C. § 1159(a) because her 1-485 application has not yet been processed and thus her status had not yet

12

been adjusted to lawful permanent resident at the time of her arrest. (Dkt. 10.) Ms. Lah argues that Respondents' new interpretation of 8 U.S.C. § 1159(a) to justify the mass detention of refugees with pending adjustment of status applications is indefensible, already rejected by three Department of Justice opinions, and that "custody" as used in the statute does not require physical detention in a cell. (Dkt. 8 at 18-20.)

> Pursuant to 8 U.S.C. 1159(a):
>
> **(1)** Any alien who has been admitted to the United States under section 1157 of this title--
> **(A)** whose admission has not been terminated by the Secretary of Homeland Security or the Attorney General pursuant to such regulations as the Secretary of Homeland Security or the Attorney General may prescribe,
> **(B)** who has been physically present in the United States for at least one year, and
> **(C)** who has not acquired permanent resident status,
> shall, at the end of such year period, return or be returned to the custody of the Department of Homeland Security for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title.
>
> **(2)** Any alien who is found upon inspection and examination by an immigration officer pursuant to paragraph (1) or after a hearing before an immigration judge to be admissible (except as otherwise provided under subsection (c)) as an immigrant under this chapter at the time of the alien's inspection and examination shall, notwithstanding any numerical limitation specified in this chapter, be regarded as lawfully admitted to the United States for permanent residence as of the date of such alien's arrival into the United States.

In sum, 8 U.S.C. § 1159(a) authorizes a refugee admitted under 8 U.S.C. § 1157, as Ms. Lah has, to be "returned to the custody of the Department of Homeland Security for inspection and examination . . . as an immigrant. . . ." 8 U.S.C. 1159(a)(1). That custody is permitted to allow DHS to conduct the inspection and examination necessary to adjudicate adjustment of status as discussed in 8 U.S.C. 1159(a)(2). *See E.E. v. Bondi et al.*, 26-cv-

13

314 (JWB/DTS), Dkt. 7 at 6-7; *Ermatov v. Bondi et al.*, 26-cv-313 (JWB/DTS), Dkt. 7 at 6-7; *Ermatov v. Bondi et al.*, 26-cv-312 (JWB/DTS), Dkt. 8 at 6-7. However, nothing in the language of 8 U.S.C. 1159(a) authorizes indefinite detention unrelated to inspection or examination. Thus, "custody" as described in 8 U.S.C. 1159(a) is lawful if it is serving the inspection and examination purposes contemplated by the statute. The regulations implementing this statute confirm this limitation upon detention or "custody." For example, after one year in the United States the regulations require a refugee to submit the adjustment application along with biometrics, and on a case-by-case basis USCIS may determine whether an interview is necessary. *See* 8 C.F.R. § 209.1(b), (d). The regulation does not, however, require detention nor prolonged custody. *Id.* Generally, when "unadjusted" refugees are arrested for an inspection under § 1159, ICE must determine whether to release the individual or issue a Notice to Appear indicating the removal charges "no later than 48 hours after the arrest." (Dkt. 1-5, Policy Memorandum, U.S. Citizenship & Immigr. Servs., Requests for Evidence and Notices of Intent to Deny, PM-11039.1, at 2 (May 10, 2010)); *see also* 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d).

Respondents' have not provided a single case supporting their novel interpretation of 8 U.S.C. § 1159(a),[17] nor do they even dispute that the manner in which Ms. Lah's arrest,

---

[17] Respondents cite one case from the District of Arizona, *Omanovic v. Crawford*, 2006 WL 2256630 (D. Ariz. Aug. 7, 2006) which is distinguishable from Ms. Lah's circumstances. In *Omanovic* the petitioner's application for adjustment of status was denied due to the petitioner's criminal convictions, and DHS properly filed a Notice to Appear to initiate removal proceedings. *Id.* at 3-4. Here, Ms. Lah has no criminal convictions, her application to adjust status is still pending, and DHS has taken no action

and transfer mere hours later, was novel. Ms. Lah on the other hand has submitted evidence of the highly unusual nature of same day transfer of individuals taken into immigration detention. (Dkt. 8-10[18] ¶¶ 14-19; Dkt. 8-8[19] ¶¶ 54; Dkt. 8-7[20] ¶¶17-18, 31-32; Dkt. 8-5 ¶¶ 8-9.) Moreover, Respondents' contention that detention is justified because Ms. Lah has not yet adjusted status, makes little sense when her timely application to adjust status has been pending with the USCIS since November 10, 2025. (Dkt. 5 ¶ 6.)

At the time of her arrest, neither Ms. Lah nor her family, were informed why Ms. Lah was being detained. (Dkt. 8-1 at 2; Dkt. 1 ¶¶ 54-57.) In fact, Ms. Lah was seized on Saturday, January 10, 2026, and not given access to her attorney until Friday, January 16, 2026, when an USCIS officer called Ms. Lah's counsel purportedly to conduct an adjustment interview despite Ms. Lah having no opportunity to consult with her lawyer. (Dkt. 8-5 at ¶ 3.) Clearly, this timeline does not comport with the 48-hours required in the U.S. Citizenship & Immigration Services policy discussed above. (Dkt. 1-5.) Nor have Respondents provided the Court with any record of how Ms. Lah's arrest and eight-day

---

to serve her a Notice to Appear. In sum, *Omanovic* does not support Ms. Lah's detention under 8 U.S.C. § 1159(a).

[18] This document is the Declaration of Alison Griffith, an attorney with ten years of immigration law experience and the Supervising Attorney of Mid Minnesota Legal Aid. (Dkt. 8-10 ¶¶ 2-3.)

[19] This document is the Declaration of Eric O'Denius, a former deportation officer with twenty-four years of experience (Dkt. 8-8 ¶¶ 5-9.)

[20] This document is the Declaration of Zachary Albun, the Legal Director of Immigration Legal Services Program at The Advocates for Human Rights, supervising immigration litigation. (Dkt. 8-7 ¶ 2.)

detention are serving the purpose of 8 U.S.C. § 1159(a), that is—the inspection and examination necessary to adjudicate her adjustment of status application that has been pending since November 2025. Ms. Lah's continued detention under these circumstances is not supported by the statute, and Respondents' have identified no other lawful basis for her continued detention. *See* 8 U.S.C. § 1159(a). The Court therefore recommends that Ms. Lah's Petition be **GRANTED IN PART**.[21]

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Respondents' Motion to Transfer (Dkt. 4) be **DENIED**; and

2. Ms. Lah's Petition (Dkt. 1) be **GRANTED IN PART:**

    a. Respondents should, within seven (7) days be required to either:

        i. Complete inspection and examination of Ms. Lah pursuant to 8 U.S.C. § 1159(a), Respondents must allow Ms. Lah access to her counsel before and during the interview if she requests.

        ii. Respondents must file a notice confirming that inspection has been completed, identifying the outcome, and stating whether Respondents contend that continued detention is authorized on a specific lawful basis; or

---

[21] Because the Court finds Ms. Lah's detention is not supported by the statute under the circumstances of this case, it does not reach Ms. Lah's other claims.

      iii. Immediately release Petition from custody in Minnesota and file a notice confirming the date, time and location of release.

Dated: January 19, 2026       *s/Shannon G. Elkins*
Time:   12:02 p.m. (CT)      SHANNON G. ELKINS
                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under the circumstances of this case and Local Rule 72.2(b)(1), the parties may file and serve specific written objections to this magistrate judge's proposed findings and recommendations **within 2 days** of the filing of the Report and Recommendation. A party may respond to those objections **within 2 days** after being served a copy of the objections without regard to weekends or holidays. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).